**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLINE PLONKA,** | : | **Civil No.  3:13-CV-1628** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARY WEAVER, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

In this case the *pro se* plaintiff, Caroline Plonka, continues to turn to the federal

courts to adjudicate an appeal of an adverse state court decision in a zoning appeal.

Plonka's initial *pro se* complaint, was filed in United States District Court for the

Eastern District of Pennsylvania on June 3, 2013, and was then transferred to this

Court.  In this complaint Plonka named six defendants:  Mary Weaver, a borough

codes enforcement officer; two attorneys who were involved in this state court zoning

litigation, Michael Briechle and Thomas Smith; the Susquehanna Borough Council

1

and Zoning Hearing Boards; and the Court of Common Pleas of Susquehanna County. (Doc. 3)

After identifying these defendants, Plonka detailed the history of her unsuccessful zoning litigation, litigation that concluded in the Common Pleas Court with an adverse ruling in May of 2013. Alleging that this ruling was evidence of unfairness by the defendants against her, Plonka sought in this self-described "land use appeal," to recover damages of $250,000 from each defendant. (Id.)

Along with her complaint, Plonka sought, and received, leave to proceed *in forma pauperis*. (Doc. 2) However, upon a screening review of Plonka's complaint, we recommended that the complaint be dismissed without prejudice to Plonka endeavoring to file an amended complaint which addressed the deficiencies identified in our Report and Recommendation. (Doc. 6) That recommendation was adopted by the district court on August 1, 2013, and Plonka's complaint was dismissed with leave to file an amended complaint. (Doc. 11)

On August 26, 2013, Plonka filed an amended complaint. (Doc. 12) This amended complaint was a five page handwritten document, which listed 19 institutional and individual defendants in the caption of the complaint, but contained virtually no factual averments relating to these defendants beyond a talismanic legal assertion that the defendants sought to deny Plonka's rights. (Id.) While the

2

amended complaint is enigmatic in its factual recitals, it is specific in its demand for compensation.  Plonka's amended complaint seeks damages of $250,000 from each defendant along with an additional $1,000,000 in damages for her pain and suffering. (Id.)  The defendants have now moved to dismiss this amended complaint. (Docs. 25 and 26)  These motions to dismiss are fully briefed and ripe for resolution.  Plonka, in turn, has filed a motion to add new defendants to this case, (Doc. 21), although Plonka has not filed a brief in support of this motion, as required by the Local Rules of this Court.  Therefore, this motion, which has been opposed by the defendants, (Doc. 31), will also be deemed ripe for resolution.

For the reasons set forth below, it is recommended that the motions to dismiss be granted, and the motion to add new defendants be denied.

## II.   Discussion

### A.   Motion to Dismiss Rule 12(b)(6)–Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

4

actions will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must also comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, when a complaint is "illegible or incomprehensible," id., or when a complaint "is also largely unintelligible," Stephanatos v. Cohen, 236 F. App'x 785, 787 (3d Cir. 2007), an order dismissing a complaint under Rule 8 is clearly appropriate. See, e.g., Mincy v. Klem, 303 F. App'x 106 (3d Cir. 2008); Rhett v. New Jersey State Superior Court, 260 F. App'x 513 (3d Cir. 2008); Stephanatos v. Cohen, supra; Scibelli v. Lebanon County, supra; Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 450 n.1 (5th Cir. 2005). Furthermore, dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action];" Binsack v. Lackawanna County Prison, 438 F. App'x 158 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. Tillio v. Spiess, No. 11-1276, 2011 WL 3346787 (Aug. 4, 2011). In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s]

that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### B.   This  Complaint Fails to State A Claim Upon Which Relief Can Be Granted

Applying these legal benchmarks, in this case dismissal of this amended complaint is warranted because Plonka's amended pleading still fails on several scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Indeed, Plonka's complaint is fatally flawed in the following respects:

1.    **The Rooker-Feldman Doctrine Still Bars Consideration of This Case to the Extent that Plonka Seeks to Appeal State Court Zoning Decisions**

At the outset, in this case, where Plonka has filed an amended complaint which continues to invite this Court to reject findings made by the state courts in the course of a zoning dispute, the plaintiff also necessarily urges us to sit as a state appellate court and review, re-examine and reject these state court rulings.

This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions."  Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006).  "The doctrine occupies 'narrow ground.'  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)." Koynok v. Lloyd, 328 F. App'x 133, 136 (3d Cir. 2009).  Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," particularly where those lawsuits necessarily require us to re-examine the outcome of state cases.  As the United States Court of Appeals for the Third Circuit has observed:

> The Rooker-Feldman doctrine divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling."  Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181,

192 (3d Cir.2006) (internal citations omitted). The doctrine occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper.   Therefore, [Plaintiff] Sullivan's claims are barred by the Rooker-Feldman doctrine.  To the extent Sullivan was not "appealing" to the District Court, but instead was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata.  See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir.2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

We recognize that there are instances in which free-standing due process claims made by a property owner arising out of a zoning dispute are not barred by the Rooker-Feldman doctrine.  See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir.2006).   However, given the plaintiff's own description and characterization of her case, Plonka's amended complaint still essentially invites us serve as an *ad hoc* Pennsylvania appellate court for matters and claims relating to this zoning dispute.  To the extent that Plonka asks us to review, revise and reverse state court decisions on land use matters in the guise of a federal civil rights lawsuit, we should decline her request and dismiss her amended complaint.[1]

---

[1]Moreover, as discussed below in Section B.4., *infra*, any free standing due process claim made by Plonka which could arguably survive under the Rooker-

### 2.   **Plonka's Complaint Fails to State Any Claims of Supervisory Liability**

In this case Plonka has named various supervisory defendants in her amended complaint but has not alleged any well-pleaded facts to give rise to supervisory liability against these officials beyond a talismanic assertion that the defendants have collectively violated her rights.   In considering claims brought against supervisory officials arising out of alleged constitutional violations, the courts  recognize that these officials may be exposed to liability only in certain, narrowly defined, circumstances.

At the outset, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were government agency supervisors when the incidents set forth in the complaint occurred.   Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in

---

Feldman doctrine, fails on its merits.

the challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir.

1997).

In particular, it is well-established that:

"A[n individual government] defendant in a civil rights action must have
personal involvement in the alleged wrongdoing; liability cannot be
predicated solely on the operation of *respondeat superior*.  Personal
involvement can be shown through allegations of personal direction or
of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional
conduct of their subordinates under a theory of *respondeat superior*. .
. . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
liability "will only result from his own neglect in not properly
superintending the discharge" of his subordinates' duties); Robertson v.
Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
public officer or agent is not responsible for the misfeasances or position
wrongs, or for the nonfeasances, or negligences, or omissions of duty,
of the subagents or servants or other persons properly employed by or
under him, in the discharge of his official duties").  Because vicarious
liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead
that each Government-official defendant, through the official's own
individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence

of evidence of supervisory knowledge and approval of subordinates' actions, a

plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).  Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, Plonka's amended complaint does little more than name a host of supervisory officials in the caption of the case, and then seeks to hold these officials personally liable based upon their official supervisory status without making any specific factual allegations about these defendants in the body of this pleading.  To the extent that Plonka simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim and compels dismissal of these defendants.  Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

In sum, as presently drafted, the plaintiff's claims against these supervisory defendants consist of little more than assertions of *respondeat superior* liability,

assertions which as a matter of law do not suffice to state a constitutional tort claim.

Therefore, these defendants are entitled to be dismissed from this case.

### 3. Plonka May Not Bring a Federal Civil Rights Action Against Private Attorneys Who Represented Parties In This State Zoning Case

In addition, Plonka's amended complaint also fails to state a claim against the

private attorneys named in that pleading, whose sole role in this matter appears to

consist of representing parties in the prior state zoning dispute. Plonka may not bring

such claims against private attorneys as civil rights violations pursuant to 42 U.S.C.

§1983. It is well-established that § 1983 does not by its own force create new and

independent legal rights to damages in civil rights actions. Rather, § 1983 simply

serves as a vehicle for private parties to bring civil actions to vindicate violations of

separate, and pre-existing, legal rights otherwise guaranteed under the Constitution

and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham

v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal

sufficiency of a cause of action under § 1983 must begin with an assessment of the

validity of the underlying constitutional and statutory claims advanced by the

plaintiff.

In this regard, it is also well-settled that:

Section 1983 provides a remedy for deprivations of federally protected
rights caused by persons acting under color of state law. The two
essential elements of a § 1983 action are: *(1) whether the conduct*

*complained of was committed by a person acting under color of state*
*law*; and (2) whether this conduct deprived a person of a federally
protected right.  Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F.Supp. 409, 416 (M.D.Pa.

1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added).  Thus, it is essential to any

civil rights claim brought under § 1983 that the plaintiff allege and prove that the

defendant was acting under color of law when that defendant allegedly violated the

plaintiff's rights.  To the extent that a complaint seeks to hold private parties liable

for alleged civil rights violations, it fails to state a valid cause of action under 42

U.S.C. § 1983 since the statute typically requires a showing that the defendants are

state actors.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs who may

invite the courts to consider lawsuits against private counsel who represented parties

in state matters.  With respect to this state action requirement, it is well-settled that

the conduct of an attorney, representing a client in a state case, does not by itself rise

to the level of state action entitling a state prisoner to bring a federal civil rights

actions against counsel.  See, e.g.,  West v. Atkins, 487 U.S. 42, 50 (1988); Polk

County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993).

Therefore, in the absence of some further well-pleaded facts, Plonka may not convert

her dissatisfaction with the performance of these counsel into a federal civil rights

lawsuit.

Similarly, the plaintiff's frustrations with counsel's active representation of a client will not give rise to a civil rights conspiracy charge against that attorney. Thus, while Plonka may feel aggrieved by the actions of counsel working on behalf of their clients in this state court land use litigation, "so long as it [the conduct of counsel] is within the scope of representation, it does not eliminate the exemption from a conspiracy charge" and the attorney will not be deemed to be a conspirator with his client for civil liability purposes. Heffernan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999) Indeed, since the Third Circuit's ruling in Heffernan, courts have consistently dismissed allegations of civil conspiracies between attorneys and their clients. See Willis v. Carroll Twp., 2008 U.S. Dist. LEXIS 17020 (M.D. Pa. 2008) (attorney cannot be held to have conspired with his or her client when the attorney's actions were conducted within the scope of the attorney client relationship and for the benefit of the client); Herring v. Chicehester School District, et. al., 2007 U.S. Dist. LEXIS 82571 (E.D. Pa. 2007) (plaintiff cannot establish participation in conspiracy based upon attorney-client relationship); See also General Refractories Co. v. Firemen's Fund Insurance Co., 337 F.3d 297 (3d Cir. 2003); Evans v. Chichester School District, 533 F. Supp. 2d 523 (E.D. Pa. 2007).

4.      **The Plaintiff Has Failed to Allege a Viable Substantive Due Process Claim**

Similarly, to the extent that the plaintiff's amended complaint alleges that the defendants' action in turning to the state courts to adjudicate this land use matter rises to the level of a substantive due process violation, the amended complaint fails to state a cause of action upon which relief can be granted.  In a local land use setting such substantive due process claims are judged against a precise, and exacting standard:

> In order to establish a viable substantive due process claim in the context of municipal land-use decisions, a plaintiff must show:  (1) a fundamental property interest protected by the Fourteenth Amendment; and (2) that the deprivation alleged resulted from government action that "may fairly be said to shock the contemporary conscience."  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 426-27 (3d Cir.2003). It is undisputed that the Plaintiff's ownership of real property satisfies the first element.  See DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell, 53 F.3d 592, 600 (3d Cir.1995) abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir.2003) (recognizing that "ownership is a property interest worthy of substantive due process protection").  The Court turns, therefore, to the second element.  The "shocks the conscience test" in land use cases was addressed by the Supreme in Sacramento v. Lewis, 523 U.S. 833 (1998).  There, the Court wrote that the "criteria used to identify what is fatally arbitrary differ depending on whether [a legislative act] or a specific act of a government officer is at issue." Id. at 846.  Cases "dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct [is] 'arbitrary in the constitutional sense.' "  Id. (quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)).  "[T]he cognizable level of executive abuse of power [is] that which shocks the conscience." Id. "While the measure of what is conscience shocking is no calibrated yard stick, it does ... 'poin[t] the way.' " Id. at 847 (quoting Johnson v. Glick, 481 F.2d 1028,

1033 (2d Cir.1973)).

Southersby Development Corp. v. Borough of Jefferson Hills, N0. 09-208, 2010 WL 1576465, *2 -3 (W.D.Pa. April 20, 2010).

Moreover, when examining substantive due process claims, like those made here, which arise in the context of property disputes, it is agreed "that 'whether a [government] official's actions or inactions violate due process is determined by utilizing a "shocks the conscience" test.' Eichenlaub, 385 F.3d at 285 ( citing United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir.2003)). Although the test is imprecise, it is clearly 'designed to avoid converting federal courts into super zoning tribunals' Id. Consequently, what 'shocks the conscience' is 'only the most egregious official conduct' Id. (quotation omitted). Mere evidence of 'improper motives' is insufficient. Id. at 286 n. 9." Locust Valley Golf Club, Inc. v. Upper Saucon Tp., No. 08-3569, 2010 WL 3096158, *3 (3d Cir. Aug. 9, 2010). Applying this standard, the United States Court of Appeals for the Third Circuit has held that land use and assessment decisions do not violate substantive due process unless they are shocking, egregious, or motivated by some form of improper self-dealing. Eichenlaub v. Township of Indiana, 385 F.3d. 274, 285-86 (3d Cir. 2004).

In this case, the allegations set forth in the Plonka's amended complaint fail to describe conduct which "shocks the conscience" and is as a matter of law "egregious." Rather, the amended complaint simply asserts that the parties have litigated a zoning dispute, and Plonka has been unsuccessful in that litigation.

Seeking judicial review of zoning matters is entirely lawful, and the decisions by local officials regarding how best to address this dispute are neither shocking nor egregious. Therefore, this course of conduct does not support a substantive due process claim and any substantive due process cause of action set forth in the plaintiff's amended complaint should be dismissed.

### C.   The Plaintiff's Motion to Add Defendants Should be Denied

Having concluded that Plonka's amended compliant remains profoundly flawed in multiple ways, and should be dismissed, we also recommend that Plonka's motion to add defendants to this lawsuit should be denied.

This motion fails for at least two reasons. First, as the defendants aptly note, (Doc. 31), Plonka has not supported her motion with a brief as required by the Local Rules. This failure to file a brief has consequences for the plaintiff since we are entitled to deem the plaintiff to have withdrawn a motion when she fails to properly support that motion by filing a brief in a timely fashion. See, e.g., Salkeld v. Tennis, 248 F. App'x 341 (3d Cir.2007) (affirming dismissal of motion under Local Rule 7.5); Booze v. Wetzel, 1:12-CV-1307, 2012 WL 6137561 (M.D. Pa. Nov. 16, 2012) report and recommendation adopted, 1:CV-12-1307, 2012 WL 6138315 (M.D. Pa. Dec. 11, 2012); Breslin v. Dickinson Twp., 1:09–CV–1396, 2011 WL 1577840 (M.D.Pa. Apr.26, 2011) Prinkey v. Tennis, No. 09–52, 2010 WL 4683757 (M.D.Pa. Nov.10, 2010) (dismissal under Local Rule 7.5); Griffin v. Lackawanna County Prison Board,

No. 07–1683, 2008 WL 4533685 (M.D.Pa.Oct.6, 2008) (dismissal under Local Rule 7.6).

More fundamentally, this motion fails on its merits.  Rule 15 of the Federal Rules of Civil Procedure governs amendments and supplementation of pleadings. Under Rule 15: "The decision of whether to permit a supplemental pleading is within this Court's discretion.  See Owens–Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188–89 (3d Cir.1979); see also Burns v. Exxon Corp., 158 F.3d 336, 344 (5th Cir.1998) (holding that district court did not abuse its discretion in denying leave to file supplemental complaint.)"  Hassoun v. Cimmino 126 F.Supp.2d 353, 360 -361 (D.N.J.2000).   Therefore, decisions regarding motions to amend or supplement pleadings rest in the sound discretion of the district court and will not be disturbed absent a abuse of that discretion.  See e.g., Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001).

That discretion, however, is governed by certain basic principles.  In this regard, while Rule 15 provides that leave to amend should be freely given when justice so requires, the district court still retains broad discretion to deny a motion to amend, Bjorgung v. Whitetail Resort, LP, 550 F.3d 263 (3d Cir. 2008); Cureton v. National Collegiate Athletic Ass'n., 252 F.3d 267 (3d Cir. 2001), and may deny a request:

if the plaintiff's delay in seeking to amend is undue, motivated by bad faith, or prejudicial to the opposing party. Adams, 739 F.2d at 864. Delay becomes "undue," and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend. Cureton, 252 F.3d at 273 (citing Adams, 739 F.2d at 868; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir.1993)). Thus, our review of the question of undue delay . . . will "focus on the movant's reasons for not amending sooner," Cureton, 252 F.3d at 273, and we will balance these reasons against the burden of delay on the District Court. Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir.1988).

Bjorgung v. Whitetail Resort, LP, supra, 550 F.3d at 266.

Furthermore, "'[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.' In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993). 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Burlington, 114 F.3d at 1434." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). Moreover, a party seeking to supplement pleadings must act in a diligent fashion. Thus, for example, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002).

Here, we initially found that Plonka's legal claims were meritless and unavailing. We then dismissed those initial claims but gave Plonka leave to amend. She has amended her complaint, but we find that this complaint, as amended, still fails to state a claim upon which relief may be granted. Thus, we are presented with a situation "where the plaintiff was put on notice as to the deficiencies in h[er] complaint, but [did] not [successfully] resolve them. Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir.1998)." Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3d Cir. 2002). At this point, adding additional defendants to this fatally flawed pleading is, in our view, an exercise in futility. Since "'[a]mong the grounds that could justify a denial of leave to amend are . . . futility.' In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ('Burlington'); Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir.1993)," Shane v. Fauver,  213 F.3d 113, 115 (3d Cir. 2000), the futility of this proposed amendment justifies denial of this motion to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motions to Dismiss, (Docs. 25 and 26), be GRANTED, the plaintiff's Motion to Add Defendants, (Doc. 21), be DENIED, and this case be closed.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of February, 2014.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge