**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLINE PLONKA,** | : | **Civil No. 3:13-CV-1628** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Caputo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARY WEAVER,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.     Statement of Facts and of the Case

#### A.     Procedural History

This case, which comes before us for resolution of a motion for summary judgment, and a related motion for sanctions, arises out of a protracted zoning dispute between the *pro se* plaintiff, Caroline Plonka, and a host of local zoning officials. Plonka's initial *pro se* complaint was filed in United States District Court for the Eastern District of Pennsylvania on June 3, 2013, and was then transferred to this court. In this complaint Plonka named six defendants: Mary Weaver, a borough codes enforcement officer; two attorneys who were involved in this state court zoning litigation, Michael Briechle and Thomas Smith; the Susquehanna borough council

1

and zoning hearing boards; and the Court of Common Pleas of Susquehanna County. (Doc. 3.)

After identifying these defendants, Plonka detailed the history of her unsuccessful zoning litigation, litigation that concluded in the Common Pleas Court with an adverse ruling in May of 2013. Alleging that this ruling was evidence of unfairness by the defendants against her, Plonka sought in this self-described "land use appeal," to recover damages of $250,000 from each defendant. (Id.) Along with her complaint, Plonka sought, and received, leave to proceed *in forma pauperis*. (Doc. 2.) However, upon a screening review of Plonka's complaint, we recommended that the complaint be dismissed without prejudice to Plonka endeavoring to file an amended complaint which addressed the deficiencies identified in our Report and Recommendation. (Doc. 6.) That recommendation was adopted by the district court on August 1, 2013, and Plonka's complaint was dismissed with leave to file an amended complaint. (Doc. 11.)

On August 26, 2013, Plonka filed an amended complaint. (Doc. 12.) This amended complaint was a five page handwritten document, which listed 19 institutional and individual defendants in the caption of the complaint. The defendants moved to dismiss this amended complaint, (Docs. 25 and 26.), and as a result of the litigation of this motion all the claims and defendants in the case were

dismissed, with one exception. The district court found that a single claim made by Plonka against one defendant, Mary Weaver a zoning enforcement officer, survived a motion to dismiss. Specifically, the district court concluded that: "Plonka's allegation in her Complaint that 'Weaver trespassed upon [Plonka's] property multiple times and even broke into appellants garage and went through appellants belongings as if she were a Police officer with a search warrant' (Docs. 3 and 6.) survives Defendants' motions to dismiss." (Doc. 42.)

With Plonka's claims narrowed in this fashion, the parties proceeded with discovery and, at the close of discovery, defendant Weaver moved for summary judgment on this sole remaining Fourth Amendment claim. That motion, and an accompanying motion for sanctions, have now been fully briefed by the parties and are, therefore, ripe for resolution.

This summary judgment motion reveals that for the most part it is now undisputed that there is no evidence to support "Plonka's allegation in her Complaint that 'Weaver trespassed upon [Plonka's] property multiple times and even broke into appellants garage and went through appellants belongings as if she were a Police officer with a search warrant.'" (Doc. 42.) Thus, Plonka now admits that Weaver came onto this property on only one occasion and not "multiple times" as she initially asserted. Further, it is clear that some of the evidence which Plonka first claimed to

have but failed to disclose does not exist. This purported evidence, which had not been disclosed in discovery, inspired a sanctions motion. In response to this motion Plonka now admits that this evidence never existed. Instead, what the undisputed evidence shows is that on one occasion in early Novemmber 2012, as part of her zoning enforcement officer duties, Mary Weaver arrived at the structure which the plaintiff was renovating in conjunction with an electrical inspection of the residence. Weaver came to this location because the electrical inspector, who the plaintiff had invited onto the property, asked Weaver to join him. Weaver knocked on the door before entering and after Weaver introduced herself as the zoning officer, Mr. and Mrs. Plonka allowed Weaver to remain in the residence without objection. In fact, Mr. Plonka gave Weaver and the electrical inspector a tour of the structure, a tour which revealed numerous building code violations and led to condemnation proceedings.

On these facts, defendant Weaver argues that she is entitled to summary judgment on this Fourth Amendment claim since she reasonably believed that the plaintiff and her husband, who guided Weaver on a tour of their residence, consented to this administrative inspection. For the reasons set forth below, we agree, and recommend that the claims against defendant Weaver be dismissed on qualified immunity grounds.

## B.    **Factual Background**

The factual background of this dispute is as follows: In October of 2011, Caroline Plonka purchased a property known as the Starrucca House, a former railroad station and hotel located in Susquehanna, Pennsylvania, with the intent of opening a hotel and railroad museum at this site. In October 2012, following a trip by Plonka and her family overseas, the plaintiff returned to the United States to take possession of the building and to reside there temporarily with her husband and son until renovations were complete on the structure. During this period of time, Plonka became acquainted with the Susquehanna Depot Borough Council and defendant Mary Weaver, the Borough's Zoning Enforcement Officer. (Doc. 42.)

As part of this process, on October 24, 2012, Weaver advised the Plonka family that they would need to have an electrical inspection performed by Fred Nemac, the electrical inspector used by the borough, in order to have electrical service restored at this property. (Doc. 66-1, ¶8.) However, even as she assisted the Plonkas in taking steps to try to come into compliance with electrical code and safety regulations, Ms. Weaver was also compelled to notify the Plonkas of a cascading array of health, safety and zoning violations relating to the Starrucca House project. Thus as October 2012 drew to a close Ms. Weaver corresponded with the plaintiff and posted a zoning

ordinance violation notice on the Plonkas' property, putting them on notice of a series of conditions which needed to be rectified. (Doc. 66-4, 66-5.)

On November 6, 2012, the electrical inspector, Mr. Nemac, conducted the inspection of the Starrucca House that Ms. Weaver had helped facilitate for the Plonkas. It is entirely undisputed that this electrical inspection was conducted with the knowledge and express consent of the plaintiff and her family, who had retained Mr. Nemac to conduct this inspection. (Doc. 66-14, pp. 38.) Mr. Nemac, in turn, invited Ms. Weaver as the zoning enforcement officer to join him as he conducted this electrical inspection.

This inspection was scheduled for November 6, 2012, at 2:00 p.m. At the appointed hour, Ms. Weaver arrived at the Starrucca House property accompanied by a local policeman.[1] Arriving at the residence, Ms. Weaver knocked on the door, and then entered the building which was under active renovation, where she met Mr. Nemac and Mr. Plonka. (Doc. 66-14, pp. 41-48.) Ms. Weaver remained on the property for approximately 20 minutes according to the plaintiff. (Id.) During this brief visit, neither Mrs. Plonka nor Mr. Plonka asked Weaver to leave or questioned

_____

[1]The presence of the police officer was requested by Ms. Weaver, who would on occasion ask a police officer to accompany her on zoning inspections if she had any concerns regarding a possible confrontation with homeowners. (Doc. 66-12.)

her presence at the electrical inspection tour as the invitee of Mr. Nemac. (Id.) Instead, Mr. Plonka agreed to provide Weaver and Nemac with a tour of the structure, a tour which revealed a number of electrical, safety, and zoning concerns. (Id.)

Contrary to what Plonka initially represented to this court in her complaint, where she alleged that " 'Weaver trespassed upon [Plonka's] property multiple times and even broke into appellants garage and went through appellants belongings as if she were a Police officer with a search warrant,' " (Doc. 42.), it is now entirely undisputed that this single episode was the only occasion upon which Weaver entered this building. (Doc. 66-14, p. 52, "Q Did she [Weaver] ever enter your building again? A. [by plaintiff] No, not after that.") Thus, Plonka has now admitted under oath that the allegation in her complaint that Weaver "trespassed upon [Plonka's] property multiple times" is factually incorrect.

At her deposition in this case, the plaintiff initially endeavored to bolster her Fourth Amendment claim by repeating an allegation which she made in her complaint; namely, an assertion that Weaver also broke into her garage. (Doc. 66-14, pp. 61-66.) With respect to this claim, the plaintiff testified at her deposition that she had no direct evidence to support this allegation since she had never seen Ms. Weaver in the garage and no one had ever reported to Ms. Plonka that Weaver had entered the garage. (Id., p.65.) Instead, at her deposition Ms. Plonka claimed that Weaver had

sent her a letter, which had previously never been disclosed in discovery, in which Weaver admitted breaking into the garage. (Id.) By the time of her deposition, Plonka's claim that she possessed this previously unknown and undisclosed letter was the only evidence which the plaintiff proffered to support this particular claim. Since Plonka, who had previously been admonished by the court for her failure to make discovery, had never revealed this purported letter to the defense, the defendant promptly filed a motion for sanctions, which sought to sanction the plaintiff for her failure to earlier reveal the existence of this alleged letter, the sole proof that Plonka claimed to have to support her allegation that Ms. Weaver had broken into her garage. (Doc. 64.)

Plonka's response to this motion for sanctions was itself highly revealing. In her response, Ms. Plonka acknowledged that this allegation was also entirely unsupported by any evidence, and admitted that the letter she once claimed proved this allegation, in fact, did not exist. (Doc. 71, p. 3, "plaintiff made clear to Mr. Murphy in a conversation off record that the letter may not exist (it does not)"). Thus, the essential factual averments made by Plonka which permitted this lawsuit to proceed forward, her claims that " 'Weaver trespassed upon [Plonka's] property multiple times and even broke into appellants garage,' " (Doc. 42.), were revealed through discovery to be entirely unfounded and false.

Once these now discredited claims were stripped away, all that remained in this case was Plonka's assertion that Weaver's presence as an invitee of Mr. Nemac, the electrical inspector, in a 20 minute electrical inspection which was conducted with the knowledge and express consent of the plaintiff and her family, violated the Fourth Amendment.  Further, with respect to this sole remaining claim, Plonka's position apparently is that this violation was so clear and patent that Ms. Weaver should have recognized that it was clearly established that she could not accompany Mr. Nemac on this tour even though the plaintiff never objected to her presence on the property, and Mr. Plonka actually volunteered to give Weaver and Nemac a guided tour of the structure.

For the reasons set forth below, we submit that on these undisputed facts Plonka' Fourth Amendment claim fails as a matter of law, and Weaver is entitled to summary judgment on that claim on qualified immunity grounds.

## II.    Discussion

### A.    Rule 56–The Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a).  Through summary adjudication a court is empowered to

dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that:  "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission

11

at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223,

n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267,

1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a
> court may only consider evidence which is admissible at trial, and that
> a party can not rely on hearsay evidence when opposing a motion for
> summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561
> (E.D.Mo.1996). Additionally, a party must respond to a hearsay
> objection by demonstrating that the material would be admissible at trial
> under an exception to hearsay rule, or that the material is not hearsay.
> See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003).
> The mere possibility that a hearsay statement will be admissible at trial,
> does not permit its consideration at the summary judgment stage. Henry
> v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa.

Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment. Therefore, where a party simply presents inadmissible

hearsay declarations in an attempt to establish a disputed material issue of fact, courts

have typically rebuffed these efforts and held instead that summary judgment is

appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL

2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug

Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

### B. Plonka's Fourth Amendment Claims Are Almost Entirely Unsupported Factually and Have Been Largely Recanted by Plonka

At the outset, we are constrained to observe that Ms. Plonka now admits that much of what she first alleged at the outset of this litigation simply is not true. In her complaint, Plonka alleged that " 'Weaver trespassed upon [Plonka's] property multiple times and even broke into appellants garage and went through appellants

belongings as if she were a Police officer with a search warrant.' " (Doc. 42.) Plonka now admits that none of these representations are accurate. Thus, instead of claiming that Weaver trespassed on her property "multiple times," Plonka now admits that Weaver was on the property once, on November 6, 2012, as an invitee of the electrical inspector that Plonka has expressly asked to come to the property. Further, far from trespassing on the property, the undisputed evidence shows that Weaver knocked on the door to the property, entered, and was given a tour of the property by Mr. Plonka. In addition, it is entirely undisputed that at no time during this 20 minute guided tour did the plaintiff or her spouse object to Ms. Weaver accompanying the electrical inspector, Mr. Nemac, on this inspection.

Plonka's claim that Weaver broke into her garage has likewise undergone a wholesale transformation in the course of this litigation. What began as an assertion of fact has now evaporated, with Plonka admitting that she has no direct evidence to support this claim. Further, when Plonka attempted to bolster this unsupported claim by alleging that Weaver admitted to this intrusion in a letter, she was challenged to produce the letter and was forced to acknowledge that "plaintiff made clear to Mr. Murphy in a conversation off record that the letter may not exist (it does not)," (Doc. 71, p. 3.) Thus, it is apparent that the gravamen of Plonka's original complaint now consists of things more imagined than real.

Much more is required of a plaintiff to resist a summary judgment motion. Since "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)), these claims, which Plonka now acknowledges are factually bankrupt, fail as a matter of law.

## C.   Defendant Weaver is Entitled to Qualified Immunity on Plonka's Remaining Fourth Amendment Claim

Once Plonka's claims are stripped of speculation, conjecture and surmise, all that remains is a single, discrete, and legally unremarkable incident:  On November 6, 2012, Mary Weaver, at the invitation of Mr. Nemac, the electrical inspector that the Plonkas had asked to come to their property to perform an electrical inspection, came to the Starrucca House to join Nemac in this inspection.  When she arrived, Weaver knocked on the door of the structure, which was an active work site and then entered the building where she met Mr. Plonka and Mr. Nemac.  Weaver was in the building for approximately 20 minutes.  During that time no one asked her to depart; quite the contrary, Mr. Plonka gave her and Nemac a tour of the building.

Now, years later, Plonka freights this fairly unremarkable episode with constitutional significance, alleging that Weaver's unobjected-to presence on this tour

as the invitee of Mr. Nemac, a man the plaintiff expressly consented to conduct an inspection of the property, violated the plaintiff's constitutional rights under the Fourth Amendment. This claim fails because Ms. Weaver is plainly entitled to qualified immunity in this case. In order to establish a civil rights claim the plaintiff must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that the plaintiff is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the

specific conduct in question, even though the very action in question has [not] previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)). In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Wilson, 455 F.3d at 191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a

defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In the past, this court has applied qualified immunity to Fourth Amendment claims arising out of building inspection disputes and denied civil rights damages claims brought by property owners against zoning officials. See <u>Lease v. Balutis</u>, No. CIV.A. 07-00003, 2012 WL 727536, at *1 (M.D. Pa. Mar. 6, 2012). In reaching this result, we have noted, at the outset, that:

> The Fourth Amendment protects against unreasonable searches or seizures. See e.g., <u>United States v. Sharpe</u>, 470 U.S. 675, 683, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The threshold inquiry for a Fourth Amendment claim is whether the government's conduct amounted to a "search." <u>United States v. Hartwell</u>, 436 F.3d 174, 177 (3d Cir.2006). Reasonableness of the defendant's actions must be viewed in consideration of the circumstances of the surrounding search. <u>U.S. v. Montoya de Hernandez</u>, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). The purpose of the Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." <u>Camara v. Mun.Court of City and County of San Francisco</u>, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Administrative searches, such as for code and zoning enforcement, can constitute "significant intrusions upon the interests protected by the Fourth Amendment ...." <u>Id</u>. at 534. To determine the scope of the consent granted, the court must apply an objective standard to assess what a reasonable person would have understood. <u>Florida v. Jimeno</u>, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Reasonableness is an inquiry that calls for the consideration of, "on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the

> promotion of legitimate government interests," <u>United States v. Williams</u>, 417 U.S. 373, 376 (3d Cir.2005) (quoting <u>United States v. Knights</u>, 534 U.S. 112, 118–19, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)).

<u>Lease v. Balutis</u>, No. CIV.A. 07-00003, 2012 WL 727536, at *5 (M.D. Pa. Mar. 6, 2012)(footnotes omitted).

Yet, while administrative searches, like zoning inspections, fall within the ambit of the Fourth Amendment, it is also clearly established that such inspections are subject to a more relaxed standard of probable cause than applies in a criminal context. A building inspection may be based upon either specific evidence of an existing violation or a showing of some reasonable legislative or administrtaive standards for conduct an inspection of a specific location. <u>Martin v. Int'l Matex Tank Terminals Bayonne</u>, 928 F.2d 614, 621 (3d Cir. 1991). Judged against this "more relaxed standard for establishing probable cause", <u>id</u>., it is apparent that the multiple building, safety, sanitation, and zoning violations previously cited against the Plonka's provided a reasonable basis for an inspection of this facility.

Absent consent or some other exception to the warrant requirement, administrative searches typically require a warrant. <u>Good v. Dauphin Cnty. Soc. Servs. for Children & Youth</u>, 891 F.2d 1087, 1092 (3d Cir. 1989). However, it is also well-established that a government official may conduct a search or inspection with the consent of a property owner. Such a consent search does not offend the

constitution and where a public official conducts an inspection under the reasonable belief that the property owner has consented, that official is entitled to qualified immunity from damages. See e.g., Moore v. Andreno, 505 F.3d 203 (2d Cir. 2007)(consent search, qualified immunity); Crim v. King, 65 F. App'x 591 (9th Cir. 2003)(same); Koch v. Town of Brattleboro, Vermont, 287 F.3d 162 (2d Cir. 2002)(same). In determining whether a party has consented to a search, courts look to the totality of the surrounding circumstances. United States v. Stabile, 633 F.3d 219, 231 (3d Cir. 2011). Consent may be either express or implied, and the factors which allow for an inference of implied consent include a failure to object to an inspection, as well as other verbal and non-verbal conduct of the property owner. See e.g., United States v. Stabile, 633 F.3d 219, 231 (3d Cir. 2011)( " 'setting in which the consent was obtained [and] the parties' verbal and non-verbal actions' " are relevant to issue of consent); United States v. Morales, 861 F.2d 396, 399 (3d Cir. 1988).

In this case, with respect to the single solitary episode which forms the remaining basis for Plonka's now largely discredited Fourth Amendment claims, we submit that Weaver should be entitled to qualified immunity from damages since no reasonable official could have anticipated that this inspection, an inspection tour guided by the plaintiff's spouse, violated the plaintiff's clearly established

constitutional rights.  Quite the contrary, the brief inspection conducted by Weaver had all of the indicia of a perfectly valid consent inspection.

At the outset, it is entirely uncontested that the Plonkas expressly consented to the electrical inspection conducted by Mr. Nemac, an inspection which found numerous safety violations.  Not only did the plaintiff consent to this inspection by Mr. Nemac, she contracted and scheduled it.  After Mr. Nemac invited Zoning Enforcement Officer Weaver to join him at this agreed-upon inspection, she arrived at the structure, knocked on the door and then entered this active work site.  On site Ms. Weaver met with Nemac and Mr. Plonka.  At no time was Ms. Weaver's presence as Mr. Nemac's invitee questioned.  Nor was she ever asked to leave.  Instead, Mr. Plonka volunteered to give her and Mr. Nemac a tour of the structure.  Given the plaintiff's express consent to Mr. Nemac's inspection, and the parties' verbal and non-verbal behavior towards Ms. Weaver, inviting her to join in the inspection tour conducted by the property owner's spouse, nothing could have alerted Ms. Weaver that her actions violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore, the defendant should be entitled to qualified immunity from damages in this case.

In short, much of what Caroline Plonka initially alleged to have occurred here she now admits either did not occur or cannot be proven, and Plonka has been compelled to recant claims that she possessed evidence confirming some of these now discredited allegations. Therefore, the gravamen of the plaintiff's claims have been revealed to be factually unsupported and fail both as a matter of fact and as a matter of law. Instead, what now remains is a single claim premised on a brief inspection conducted by defendant Weaver in conjunction with another electrical inspection that the plaintiff expressly consented to undergo. This inspection was done with the knowledge of the plaintiff and her spouse, who did not object to the inspection but actually assisted in the inspection by touring Ms. Weaver through the structure. As to this claim, nothing in the plaintiff's conduct would have alerted defendant Weaver that by accepting the invitation of Mr. Plonka to give her a tour of the building she would have violated the plaintiff's clearly established constitutional rights. Therefore, Ms. Weaver is entitled to qualified immunity on this last remaining claim.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that defendant's Weaver's motion for summary judgment (Doc. 66.) be GRANTED. IT IS FURTHER RECOMMENDED that, in light of the fact that the plaintiff now acknowledges that the purported evidence which was the subject of the defendant's

Motion for Sanctions does not exist, that motion for sanctions (Doc. 64.) should be

DISMISSED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 24th day of August 2015.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge